USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __01/13/26___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATTY CARAMBOT, Ph.D.,

                Plaintiff,

-against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, et al,

                Defendants.

24-CV-841 (JPO) (BCM)

**MEMORANDUM AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Patty Carambot worked as a forensic criminal psychologist for the New York City Health and Hospitals Corporation (HHC) in its Correctional Health Services (CHS) department, providing mental health care to detainees at the Rikers Island Correctional Facility (Rikers), which is operated by the New York City Department of Correction (DOC). *See* Compl. (Dkt. 9) ¶¶ 6, 17-19; *Carambot v. New York City Health & Hosps. Corp.*, 2025 WL 753893, at *1 (S.D.N.Y. Mar. 10, 2025). Plaintiff brought this action under 42 U.S.C. § 1983 and New York Civil Service Law § 75-b, alleging that she was suspended in August 2023 and fired in October of that year because she "expressed concern over the conditions at Rikers," in violation of her First Amendment rights and in retaliation for her efforts to report constitutionally deficient treatment of detainees. Compl. ¶¶ 135-54; *Carambot*, 2025 WL 753893, at *3. On March 10, 2025, the Hon. J. Paul Oetken, United States District Judge, permitted plaintiff to proceed on her § 1983 claim, but only against three individual defendants: her supervisor Virginia Fineran, the Director of Mental Health Services at Rikers; Patricia Yang, a CHS Senior Vice President; and Jessica Laboy, CHS's Chief Administrative Officer. *Carambot*, 2025 WL 753893, at *8-10. Additionally, the District Judge permitted plaintiff to proceed against HHC under § 75-b. *Id*. at *10.

The parties are now engaged in discovery. On November 14, 2025, plaintiff served a notice of deposition for the three individual defendants and ten additional witnesses, all of whom are

current or former employees of HHC or DOC. On December 16, 2025, defendants filed a letter-motion seeking a protective order, pursuant to Fed. R. Civ. P. 26(c)(1)(A), "preventing the depositions" of nine of those witnesses. Def. Mot. (Dkt. 76) at 1. On December 19, 2025, plaintiff filed a letter opposing defendants' motion and cross-moving, pursuant to Fed. R. Civ. P. 30(a)(2)(A)(i), for leave "to take more than ten depositions." Pl. Opp. (Dkt. 77) at 1. On December 22, 2025, defendants filed a letter in further support of their protective order motion, *see* Def. Reply (Dkt. 79) at 1, and in opposition to the cross-motion. For the reasons that follow, defendants' motion will be granted in part – as to four of the challenged witnesses – and plaintiff's motion will be denied without prejudice.

## I.    STANDARDS

### A.    Rules 26(b)(1), (b)(2)(C), and (c)(1)(A)

Ordinarily, a party may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Since "information within this scope of discovery need not be admissible in evidence to be discoverable," *id.*, "the Rule 26(b)(1) standard presents a 'relatively low threshold[.]'" *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) (quoting *In re Zyprexa Injunction,* 474 F. Supp. 2d 385, 421 (E.D.N.Y. 2007)). "However, district courts have 'broad discretion to manage the manner in which discovery proceeds.'" *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 2022 WL 2162992, at *2 (S.D.N.Y. May 31, 2022) (quoting *Diamond v. 500 SLD LLC*, 2022 WL 956262, at *2 (S.D.N.Y. Mar. 30, 2022)).

Under Rule 26(b)(2)(C), a court must limit the "extent of discovery otherwise allowed" if it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive" or if it is "outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(i), (iii). Additionally, a court may, on motion, issue a

2

protective order to safeguard a party or witness "from annoyance, embarrassment, oppression, or undue burden or expense," including by "forbidding" the challenged discovery, Fed. R. Civ. P. 26(c)(1)(A), "but the moving party bears the burden of establishing good cause for such a protective order." *Rekor Sys., Inc. v. Loughlin*, 2022 WL 488941, at *1 (S.D.N.Y. Feb. 17, 2022) (quoting *Qube Films Ltd. v. Padell*, 2015 WL 109628, at *2 (S.D.N.Y. Jan. 5, 2015)); *see also Khan v. New York City*, 757 F. Supp. 3d 327, 338 (E.D.N.Y. 2024) ("[T]he party seeking the protective order bears the burden of establishing good cause under Fed. R. Civ. P. 26(c).") (citation omitted).

### B.      Apex Doctrine

Courts frequently rely on Rule 26(c)(1)(A) to prohibit depositions of "high-ranking government official[s]." *Lederman v. New York City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (quoting *United States v. Morgan,* 313 U.S. 409, 422 (1941), and upholding district court's Rule 26(c) order prohibiting plaintiffs from taking the depositions of the Mayor and a former Deputy Mayor of New York in a First Amendment-based challenge to the City's efforts to prevent visual artists from selling their works on sidewalks and in parks). The standard for conducting such a deposition – known as an "apex deposition" – is high: "[T]o depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition – for example, that the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Id*.; *see also Loc. 2507, Uniformed EMTs, Paramedics & Fire Inspectors v. City of New York*, 787 F. Supp. 3d 4, 6 (S.D.N.Y. 2025) (applying *Lederman* standard to prohibit plaintiffs from deposing Fire Commissioner in civil rights suit where plaintiffs did not show "that the Commissioner has any unique or first-hand knowledge"). The party seeking the apex deposition "bear[s] the burden of showing that the deposition of the [high-ranking official] is

3

appropriate under these criteria." *Winfield v. City of New York*, 2018 WL 4350246, at *1 (S.D.N.Y. Sept. 12, 2018).

For purposes of the apex doctrine, the question whether a proposed witness qualifies as a "high-ranking government officer" is determined "on a case-by-case basis." *In re Terrorist Attacks on Sept. 11, 2001*, 2020 WL 8611024, at *12 (S.D.N.Y. Aug. 27, 2020) (internal quotation and citation omitted), *adopted*, 2021 WL 2227204 (S.D.N.Y. June 2, 2021). However – as the label itself implies – the doctrine has "generally only been applied to government officials who are at the apex of their organization." *Sec. & Exch. Comm'n v. Comm. on Ways & Means of the U.S. House of Representatives*, 161 F. Supp. 3d 199, 250 (S.D.N.Y. 2015) (collecting cases); *accord In re Terrorist Attacks*, 2020 WL 8611024, at *12.

One purpose of the apex doctrine "is to leave officials free to conduct government business." *Raymond v. City of New York*, 2020 WL 1067482, at *4 (S.D.N.Y. Mar. 5, 2020) (citations and quotation marks omitted), *adopted*, 2020 WL 3619014 (S.D.N.Y. July 2, 2020); *see also Lederman*, 731 F.3d at 203 ("High-ranking government officials are generally shielded from depositions because they have 'greater duties and time constraints than other witnesses.' If courts did not limit these depositions, such officials would spend 'an inordinate amount of time tending to pending litigation.'") (internal citations omitted). The apex doctrine "applies to both current and former high-ranking officials," *Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014), because subjecting former leaders to "the possibility of continued participation in lawsuits years after leaving public office would serve as a significant deterrent to qualified candidates for public service." *Raymond*, 2020 WL 1067482, at *4 (citation omitted). However, the fact that a proposed witness is no longer in office "is a factor when considering whether the information can be obtained through less burdensome means and whether the deposition will interfere with the

4

official's government duties." *Comm. on Ways & Means*, 161 F. Supp. 3d at 249 (quoting *Moriah*, 72 F. Supp. 3d at 440).

### C. Rule 30(a)(2)(A)(i)

A party intending to depose more than the "presumptive limit of ten depositions per side," *Ruggles v. Emblemhealth Svcs. Co.*, 2026 WL 18696, at *1 (S.D.N.Y. Jan. 2, 2026), must obtain the consent of her opponents or leave of the court before taking an eleventh deposition. Fed. R. Civ. P. 30(a)(2)(A)(i). "In determining whether a party may depose more than ten people, courts consider: 'whether (1) the discovery sought is unreasonably cumulative or duplicative or can be obtained from some other source that is more convenient, less burdensome, or less extensive, (2) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action, and (3) the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.'" *Fecteau v. City of Mount Vernon*, 2025 WL 1664034, at *3 (S.D.N.Y. June 11, 2025) (quoting *Atkinson v. Goord*, 2009 WL 890682, at *1 (S.D.N.Y. Apr. 2, 2009)). "The purpose of Rule 30(a)(2)(A) is to 'enable courts to maintain a "tighter rein" on the extent of discovery and to minimize the potential cost of "[w]ide-ranging discovery."'" *Galgano v. Cnty. of Putnam*, 2021 WL 2138759, at *1 (S.D.N.Y. May 26, 2021) (citation omitted).

## II. ANALYSIS

Plaintiff's November 14, 2025, notice of deposition, *see* Def. Mot. Ex. A, lists the three individual defendants in this action (Yang, Fineran, and Laboy), plus the following ten witnesses:

1. Wilma Soto, the Senior Director of Human Resources at CHS, *see* Compl. ¶ 37; who was dismissed as an individual defendant in this action by the District Judge, *see Carambot*, 2025 WL 753893, at *9-10;

2.  Stephanie Palmadesso, the Senior Director of Employee and Labor Relations/Legal at CHS, *see* Compl. ¶ 110;

3.  Bipin Subedi, M.D., the Chief Medical Officer and Senior Assistant Vice President of CHS, *see id.* ¶ 90;

4.  Thomas Griffin, a former DOC Assistant Commissioner, *see id*. ¶ 89;

5.  Jonathan Levine, a former DOC Assistant Commissioner for the Investigation/Prison Rape Elimination Administration (PREA) Division, *see id*. ¶ 98;

6.  Louis Molina, the former DOC Commissioner, *see id*. ¶ 41, who was dismissed as an individual defendant in this action by the District Judge, *see Carambot*, 2025 WL 753893, at *9-10, and who now serves as Commissioner of the Department of Citywide Administrative Services, *see* Def. Mot. at 3;

7.  James Saunders, a DOC Deputy Commissioner, *see* Compl. ¶ 89;

8.  Lauren Stossel, M.D., the former Medical Director and Chief of the Mental Health Service at CHS, *see* Compl. ¶ 74;

9.  Joe Otonichar, who is not mentioned in the Complaint but is identified by defendants as a current HHC employee whose first name is Joseph, *see* Def. Mot. at 2; and

10. Mohhamad Bacchus, who is not mentioned in the Complaint but is identified by defendants as a former HHC employee whose first name is Ryan, and who was "present at Plaintiff's separation." Def. Mot. at 2.[1]

Defendants have agreed to produce the three individual defendants and Palmadesso (a current HHC employee whom they listed in their initial disclosures, made pursuant to Fed. R. Civ. P. 26(a)(1)(A), as a witness "likely to have discoverable information regarding Plaintiff's employment, complaints, and separation"). Def. Mot. at 2; Pl. Opp. at 3. However, they seek a protective order preventing plaintiff from deposing the remaining noticed witnesses – or any witnesses exceeding ten – arguing, among other things, that the apex doctrine protects

---

[1] Additionally, in her cross-motion, plaintiff states that she "has identified upwards of fifty . . . individuals with relevant knowledge," whom she may wish to depose at a later time, Pl. Opp. at 4, but does not identify any individual witnesses beyond those named in her initial deposition notice.

Commissioner Molina, Deputy Commissioner Saunders, and former Assistant Commissioners Levine and Griffin from deposition. *See* Def. Mot. at 3.

I discuss each contested witness in turn.

**A.    Louis Molina**

Commissioner Molina, who as Commissioner of the DOC was "responsible for the policy, practice, supervision, implementation and conduct of all DOC matters and for the training, supervision and conduct of all DOC personnel," Compl. ¶ 42 , is undoubtedly subject to the apex doctrine. *See, e.g.*, *Chin v. New York City Dep't of Correction*, 741 F. Supp. 3d 18, 24 (E.D.N.Y. 2024) (applying apex doctrine to former DOC Commissioner). Plaintiff argues that she should nonetheless be permitted to take Molina's deposition because she has alleged that Assistant Commissioner Levine told plaintiff that he would convey "her written complaints" to Molina. Pl. Opp at 2-3; Compl. ¶¶ 100-101. This is clearly insufficient to "demonstrate exceptional circumstances justifying the deposition," as required by *Lederman*, 731 F.3d at 203.

If and to the extent the conversation between plaintiff and Levine is relevant to the claims and defenses in this action, Molina does not have "unique first-hand knowledge" of it. *Lederman*, 731 F.3d at 203. To the contrary: only Levine himself can confirm or deny that the conversation took place as alleged. Moreover, plaintiff fails to explain why it matters to her remaining claims whether Levine promised to convey her written complaints to Molina – or, for that matter, whether he did so. As defendants point out, the District Judge "dismissed all claims against Commissioner Molina and terminated him as a named party," Def. Mot. at 3, because plaintiff "failed to allege in more than a conclusory fashion Molina's involvement in any employment action against her." *Carambot*, 2025 WL 753893, at *9. Even assuming, *arguendo*, that plaintiff is entitled to discovery as to whether Molina had a role in the termination of her employment, the necessary information "could be obtained through less burdensome means," including depositions of plaintiff's direct

7

supervisor and others closer to plaintiff herself in the chain of authority. *Raymond*, 2020 WL 1067482, at \*5 (prohibiting depositions of former NYPD Commissioners Bratton and O'Neill – through which plaintiffs hoped to determine whether they "directed [plaintiff] Gonzalez's immediate supervisors to retaliate against him" – because the same information could be obtained by "deposing Gonzalez's superiors"). Plaintiff has thus failed to show that Molina "has unique first-hand knowledge related to the litigated claims" or that he possesses "necessary information" that cannot be obtained through "less burdensome or intrusive means." *Lederman*, 731 F.3d at 203.

### B.    James Saunders

As a sitting Deputy Commissioner of the DOC, Saunders appears to be eligible for the apex doctrine. *See Khan*, 757 F. Supp. 3d at 330 (applying doctrine to prohibit deposition of Deputy NYPD Commissioner). Here too, plaintiff has failed to show that the "high-ranking government official" she seeks to depose has unique first-hand knowledge relevant to her claims or that he possesses necessary information that could not be obtained through less burdensome or intrusive means. *Lederman*, 731 F.3d at 203. Indeed, as to Saunders, she does not even clear the "relatively low threshold" set by Rule 26(b)(1). *John Wiley & Sons*, 298 F.R.D. at 186. In her Complaint, plaintiff mentions Saunders only once: alleging that in July 2023 she "complained to . . . DOC Assistant Commissioners [sic] Thomas Griffin and James Saunders." Compl. ¶ 89. She does not explain what she complained to Saunders about, and does not suggest that he played any role in her termination. In her opposition letter, she says nothing at all about Saunders. Plaintiff has thus failed to carry her burden of showing that she is entitled to his deposition.

### C.    Jonathan Levine and Thomas Griffin

Defendants assert that the apex doctrine should also apply to Levine and Griffin, who are both former Assistant Commissioners of the DOC, but fail to explain why they qualify for that doctrine. The DOC is led by one Commissioner, assisted by an Executive Deputy Commissioner,

several Deputy Commissioners, and various Associate Commissioners – all of whom outrank the department's Assistant Commissioners, of whom there appear to be many. *See* N.Y. Comp. Codes R. & Regs. tit. 7, §§ 50.1 (a)-(f) (listing officials of the DOC); Press Release, N.Y.C. Dep't of Correction, DOC Appoints Five Assistant Commissioners of Operations (Apr. 24, 2023), *https://www.nyc.gov/site/doc/media/five-assistant-commissioners.page*.

As noted above, the presumption against permitting depositions of high-ranking government officials has "generally only been applied . . . to government officials . . . at the 'apex'" of a government agency, which Assistant Commissioners are not. *In re Terrorist Attacks*, 2020 WL 8611024, at *12 (quoting *Comm. on Ways & Means*, 161 F. Supp. 3d at 250, and holding that "a staff director of a congressional subcommittee" is not sufficiently high-ranking). Nor do defendants present any information about the current positions of Levine and Griffin. The Court is thus unable to conclude that the proposed depositions will "interfere with [their] government duties," if any, *Comm. on Ways & Means*, 161 F. Supp. 3d at 249, or otherwise unduly burden them. Defendants have thus failed to show that the apex doctrine applies to these two former Assistant DOC Commissioners.

Nor have they demonstrated that this Court should prohibit the depositions of Levine and Griffin under Rule 26(b)(2)(C) or (c)(1)(A). Plaintiff alleges that Levine interviewed her on August 22, 2023, after the death of a Rikers inmate, and that during the interview plaintiff "shared her concerns about" a wide range of DOC practices and brought to Levine's attention a past email that she sent to defendant Fineran. *See* Pl. Opp.at 3; Compl. ¶¶ 98-99. Levine then "requested that Carambot send him" follow-up emails "about her concerns," and Levine himself "followed up with an email" to plaintiff. Compl. ¶¶ 100-101. These exchanges allegedly occurred on the same day – and immediately preceded – the "email from HHC's Human Resources (HR), asking Carambot to

come" to a meeting, at which she was placed on "administrative leave." *Id*. 107, 109. The decision to place plaintiff on administrative leave, and whether or not that action was "punitive" and related to her criticisms of DOC policies, *id.* ¶ 111, is a central component of plaintiff's claims. *See id*. ¶¶ 9, 144, 152.

It may be true, as defendants assert, that any relevant emails with Levine will be collected and produced, Def. Mot. at 4, but defendants do not claim that anyone else was present for Levine's August 22, 2023 interview of plaintiff. *See* Ans. (Dkt. 53) ¶¶ 98-101 (admitting that "Plaintiff conversed with Jonathan Levine on August 22, 2023," immediately before she was placed on administrative leave). Even if Levine were subject to the apex doctrine, therefore, I would conclude that plaintiff has made an adequate showing not only that his deposition is relevant to her claims but also that his testimony concerning the August 22 conversation – as well as any communications he had about that conversation with HHC Human Resources – cannot be obtained from any other witness or party emails. In short, plaintiff has sufficiently shown that Levine likely "possesses unique first-hand knowledge related to the litigated claims," *Lederman*, 731 F.3d at 203, and is therefore entitled to use one of her ten allotted depositions to obtain his testimony.

As to Griffin, it is a closer call. On balance, however I conclude that plaintiff's allegations are more than sufficient to show that his testimony is relevant to her claims, *see* Fed. R. Civ. P. 26(b)(1), while defendants have failed to demonstrate that his deposition should be blocked under the standards applicable to non-apex witnesses. Plaintiff alleges that on July 26, 2023 – less than a month before she was placed on administrative leave – she complained about staff and patient safety to Griffin, including a recent DOC decision to move "many mentally ill people at once," but that Griffin was "dismissive of Carambot's complaints and concerns," and "made it clear that [her] direct supervisor and CHS administration" were "all in agreement with all the decisions made to

move these patients, in addition to how it was being done." Compl. ¶¶ 92-93. Griffin then indicated that he wished to speak to plaintiff and plaintiff's supervisor together. *Id*. ¶ 93. These allegations are relevant to plaintiff's First Amendment claim, which requires her to show, among other things, that her "protected speech was a substantial motivating factor in the adverse employment action." *Carambot*, 2025 WL 753893, at *7. Defendants do not state where plaintiff could obtain first-hand testimony about this conversation, if not from Griffin – who could also testify, on personal knowledge, whether he "made known" plaintiff's complaints and concerns to her CHS supervisors (including the defendants herein), as alleged, Compl. ¶ 94, and, if so, what if anything he said to them about her continued employment. I therefore decline to issue the requested protective order as to former Assistant Commissioner Levine.[2]

### D.    Joseph Otonichar

Defendants contend that the deposition of current HHC employee Joseph Otonichar would be "duplicative of current named Defendants who will be deposed and documents produced in this litigation." Def. Mot. at 2-3. In response, plaintiff fails to show that the proposed Otonichar deposition satisfies even the "relatively low threshold" for relevance ordinarily required by Rule 26(b)(1). *John Wiley & Sons*, 298 F.R.D. at 186. Both the Complaint and plaintiff's opposition letter are completely silent as to Otonichar. Thus, in order to prevent plaintiff from taking discovery "outside the scope permitted by Rule 26(b)(1)," Fed. R. Civ. P. 26(b)(2)(C)(iii), and to protect defendants and the witness against "undue burden or expense," Fed. R. Civ. P. 26(c)(1), plaintiff will be prohibited from taking the deposition of Joseph Otonichar.

---

[2] If defendants are unwilling or unable to "produce" the former Assistant Commissioners (or any other witnesses who are no longer employed at HHC), plaintiff will of course be required to serve them with subpoenas in accordance with Fed. R. Civ. P. 45(a)-(c).

### E.    Ryan Bacchus

Plaintiff's Complaint and opposition letter are also silent as to former HHC employee Bacchus. However, defendants acknowledge that he attended the October 13, 2023 meeting where plaintiff was informed of her termination. *See* Def. Mot. at 2. Further, the Court is aware – as a result of related motion practice – that plaintiff, Bacchus, and Palmadesso were the only persons physically present at that meeting, and that the parties heatedly dispute not only what transpired there but also whether other HHC officials attended remotely, whether the meeting was recorded, and whether Bacchus or Palmadesso made a separate video recording of plaintiff's departure from the meeting. (*See* Dkts. 78, 80, 82.) Consequently, plaintiff may, if she wishes, take Bacchus's deposition.

### F.    Bipin Subedi

Plaintiff alleges that on July 6, 2023, "by email," she complained to defendant Yang and to non-party Subedi, the CHS Chief Medical Officer, about "unethical, improper, and unsafe practices" at Rikers Island. Compl. ¶ 90. She does not allege that she ever spoke to Dr. Subedi or that he ever spoke to anyone else at CHS (or DOC) about her. Similarly, in opposition to defendants' motion for a protective order, plaintiff argues only that Dr. Subedi "received Plaintiff's July 6, 2023 email." Pl. Opp. at 3. This is insufficient, because the email itself will establish, beyond doubt, whether plaintiff's allegation is accurate, and plaintiff offers no other reason for taking his deposition. Once again, therefore, in order to prevent "undue burden or expense," Fed. R. Civ. P. 26(c)(1), plaintiff will be prohibited from taking the deposition of Dr. Subedi.

### G.    Wilma Soto and Lauren Stossel

As to the final two non-party witnesses in dispute – Soto and Stossel – defendants do not assert that they are high-ranking government officials subject to the apex doctrine. Nor do they argue that these witnesses have no relevant testimony to offer. Instead, defendants ask the Court

to bar plaintiff from taking the depositions of Soto and Stossel under Rule 26(c)(1)(A) because they are not "named Defendants" and there is "no need for multiple non-party depositions." Def. Mot. at 3. Defendants additionally state – in broad terms, with no specifics – that the testimony of Soto and Stossel "would be duplicative of current named Defendants who will be deposed and documents produced[.]" *Id.*

In response, plaintiff points out that defendants identified both Soto and Stossel in their Rule 26(a)(1)(A) initial disclosures as "individuals likely to have discoverable information regarding Plaintiff's employment, complaints, and separation." Pl. Opp. at 3. Stossel was "present during Plaintiff's communications with the press," *id.*; *see also* Compl. ¶ 74, while Soto was "responsible for ensuring that employees are not subject to retaliatory practices," Compl. ¶ 39, but instead "participated in the retaliatory employment actions." Pl. Opp. at 3. The fact that the Court "previously dismissed all claims against . . . Soto," Def. Reply at 1 n.1 (and that Stossel was never a party) thus does not bar the deposition discovery that plaintiff now seeks from them. Moreover, defendants do not show that any of the three remaining individual defendants was present when plaintiff spoke to the press (like Stossel) or had any human resources training or responsibilities within CHS (like Soto). Defendants have thus failed to show that the testimony of these two witnesses would be so "cumulative" of the anticipated testimony of the individual defendants as to warrant a protective order.

### H.    Unspecified Additional Depositions

Apart from their disputes concerning the specific witnesses discussed above, the parties disagree as to how many depositions plaintiff should be permitted to take. In her cross-motion, plaintiff "affirmatively seeks leave . . . to take more than ten depositions," Pl. Opp. at 1, but does not identify any anticipated witnesses beyond those she has already noticed. Instead, plaintiff argues in general terms that she has identified "upwards of fifty (50) individuals with relevant

knowledge of her claims," and that "[c]ourts in this district routinely permit additional depositions in such circumstances." *Id.* at 4 (citing *Commodity Futures Trading Comm. v. Commodity Inv. Group, Inc.*, 2005 WL 3030816 (S.D.N.Y. Nov. 10, 2005)). In that case, however, the CFTC alleged a massive fraud during which defendant CIG "repeatedly made fraudulent misrepresentations" over a five-year period. *Commodity Inv. Group*, 2005 WL 3030816 at *1. Moreover, the court did not give the CFTC carte blanche to depose scores of witnesses, as plaintiff here requests. Rather, it considered each proposed witness individually, and ultimately permitted the CFTC to depose eleven non-party CIG employees and three non-party customers. *See id*. at *2 ("Additional depositions would be too costly and would not provide CFTC with sufficient new information to justify the burden on defendants.").

Further, as defendants point out, a party hoping to take more than ten depositions need not rely "on the Court to undertake the necessary winnowing" of potential witnesses "until the moving party has exhausted the ten depositions permitted as of right" under Rule 30. Def. Reply at 1 (quoting *Oakley v. MSG Networks, Inc.*, 2024 WL 5056111, at *2 (S.D.N.Y. Dec. 10, 2024) (internal citations omitted)); *accord Fecteau*, 2025 WL 1664034, at *3. In this case, if plaintiff proceeds to conduct the depositions of all three individual defendants, plus Palmadesso, Levine, Griffin, Bacchus, Soto, and Stossel, she will have completed a total of nine, which does not require a court order. Thus, at present, plaintiff's Rule 30(a)(2)(A)(i) motion is premature.

## III.    CONCLUSION

For the reasons set forth above, defendants' motion for a protective order (Dkt. 76) is GRANTED IN PART, as to Molina, Saunders, Otonichar, and Subedi. Plaintiff's motion for leave to take more than ten depositions (Dkt. 77) is DENIED as premature, without prejudice to her right to renew the motion based on an adequate showing of need for specific additional depositions. The

14

parties are reminded that, pursuant to this Court's October 23, 2025 Case Management Order (Dkt. 72), all fact depositions must be completed no later than April 17, 2026.

The Clerk of Court is respectfully directed to close the motion at Dkt. 76.

Dated: New York, New York
       January 13, 2026

SO ORDERED.

**BARBARA MOSES**
**United States Magistrate Judge**

15