UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATTY CARAMBOT, Ph.D.,

Plaintiff,

-against-

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION, et al,

Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___05/11/26___

24-CV-841 (JPO) (BCM)

**DISCOVERY ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Now before the Court are two letter-motions complaining of discovery deficiencies. The first was filed by plaintiff on April 21, 2026; the second was filed by defendants the next day. Defendants' motion will be granted in part, as specified below. Plaintiff's motion requires a conference, which will take place on **May 19, 2026**, at **11:00 a.m.**

## Background

Plaintiff Patty Carambot worked as a forensic clinical psychologist for the New York City Health and Hospitals Corporation (HHC) in its Correctional Health Services department, providing mental health care to detainees at the Rikers Island Correctional Facility (Rikers). *See* Compl. (Dkt. 9) ¶¶ 6, 17-19; *Carambot v. New York City Health & Hosps. Corp.*, 2025 WL 753893, at *1 (S.D.N.Y. Mar. 10, 2025) (*Carambot I*). Plaintiff brought this action under 42 U.S.C. § 1983, alleging that she was suspended in August 2023 and fired in October of that year because she "expressed concern over the conditions at Rikers," in violation of her First Amendment rights and in retaliation for her efforts to report constitutionally deficient treatment of detainees. Compl. ¶¶ 135-54; *see also Carambot I*, 2025 WL 753893, at *3.

The parties are now engaged in discovery, which has been contentious. *See, e.g., Carambot v. New York City Health & Hosps. Corp.*, 2026 WL 99994 (S.D.N.Y. Jan. 13, 2026) (*Carambot II*) (denying plaintiff's motion for leave to take more than 10 depositions and granting in part

defendants' motion for a protective order as to certain depositions sought by plaintiff); *Carambot v. New York City Health & Hosps. Corp.*, 2026 WL 112119 (S.D.N.Y. Jan. 14, 2026) (*Carambot III*) (denying plaintiff's motion for "discovery on discovery" as to whether certain video or audio recordings exist); *Carambot v. New York City Health & Hosps. Corp.*, 2026 WL 542234 (S.D.N.Y. Feb. 26, 2026) (*Carambot IV*) (setting various deadlines for document discovery and providing guidance regarding deposition scheduling).

Pursuant to *Carambot IV*, defendants were required produce a hit report regarding their then-forthcoming production of electronically stored information (ESI) no later than March 9, 2026, "after which the parties may need to meet and confer once again to determine whether any further narrowing or other modification of the search terms would be appropriate, and defendants must promptly commence their rolling production of ESI." 2026 WL 542234, at *2. Thereafter, the parties were required to substantially complete document discovery no later than April 17, 2026, and to "immediately commence scheduling depositions," so that they could take place promptly after document discovery was substantially complete. *Id*. Pursuant to a later order, jointly requested by the parties, the fact discovery deadline was extended to July 9, 2026. Dkt. 94 at 2.[1]

## Defendants' Motion

The Court has carefully reviewed (i) defendants' April 22 letter-motion (Def. Mot.) (Dkt. 96), which seeks an order compelling plaintiff to produce additional documents and information in response to defendants' interrogatories and requests for production (RFPs), originally served on November 12, 2025; (ii) plaintiff's April 24 opposition letter (Pl. Opp.) (Dkt. 99); and (iii) defendants' April 28 reply letter (Def. Reply) (Dkt. 100). After considering the parties' arguments, and finding good cause, the Court GRANTS the motion IN PART, as follows:

---

[1] Unless otherwise indicated, all future date references in this Order are to dates in 2026.

*Communication Apps and Social Media Handles*

Defendants' Interrogatory 13 asks plaintiff to identify the "communication and/or messaging applications, and social media accounts" that she has maintained, used, or "had access to" from July 1, 2016 to the present, along with her usernames. Def. Mot. Ex. 2, at 26-27. In her Amended Responses and Objections, served on April 20, plaintiff objected on various grounds, including that Interrogatory 13 is "an unwarranted invasion of privacy" designed to "embarrass and intimidate" her. *Id*. at 28. In her opposition letter, plaintiff stands on those objections, explaining that she has agreed to produce "relevant communications," but arguing that she should not be compelled to disclose "all social media accounts and handles." Pl. Opp. at 1.

Plaintiff's objection is misplaced. Defendants have not asked her to turn over all of her *communications* on messaging apps or social media. They merely ask her to identify all of her *accounts*, with applicable usernames – a request which, in today's world, is functionally indistinguishable from a request that a plaintiff identify her email addresses. Plaintiff may have used these accounts (just as she used her email accounts) to express her concerns about detainee treatment at Rikers, which is central to her claim of First Amendment retaliation, or to discuss the alleged retaliation she experienced. The cases that plaintiff cites in support of her objection underscore the distinction between identifying an account and turning over all of its contents. *See, e.g., Caputi v. Topper Realty Corp.*, 2015 WL 893663, at *5-6 (E.D.N.Y. Feb. 25, 2015) (denying defendant's motion to compel plaintiff to "produce a complete history of [her] Facebook account, including without limitation all wall posts, status updates, pictures, messages, communications to or from [her] account, and any other content displayed at any time on [her] Facebook account," as "too broad to withstand scrutiny").

However, the ten-year time-period specified by defendants is unreasonably long, particularly given that plaintiff did not begin articulating the complaints for which she says she

was fired until 2022. *See* Compl. ¶ 65. Moreover, Interrogatory 13 is vague insofar as it asks plaintiff to identify all social media accounts that she "had access to." Consequently, plaintiff must identify all communication applications, messaging applications, and social media accounts that she owned, maintained, or used to send or post communications, from February 5, 2019 (five years before she filed her Complaint) to the present, including her username (or other "handle") for each such application or account.

*Employment Release*

Defendants' Interrogatory No. 18 asks plaintiff to identify her post-HHC employers and provide a release, for each, that permits defendants to obtain "the records connected to such employment." Def. Mot. Ex. 2 at 29. Defendants argue that these records are relevant to this action because plaintiff seeks (among other things) lost wages, and had a duty to mitigate her damages by seeking comparable employment. Def. Mot. at 2-3. In response to Interrogatory No. 18, plaintiff identified one employer – Community Assistance Resources and Extended Services, Inc. (CARES) – but refused to sign the requested release. *Id*. She now states that she has already provided "documents reflecting mitigation and post-termination employment," but objects to the release sought because it would give defendants "unrestricted access to Plaintiff's personnel file," and is thus overbroad. Pl. Opp. at 2.

Defendants are correct that plaintiff's post-HHC mitigation efforts and compensation are relevant to her damages claim, and that they "are entitled to conduct their own discovery" into these topics, rather than rely entirely on "Plaintiff's assurances as to the veracity of her mitigation efforts and damages." Def. Reply at 2. However, plaintiff is correct that the form of release requested by defendants would extend to "all" of plaintiff's employment records at CARES, including documents unrelated to mitigation and damages, such as "performance evaluation records" and "disciplinary records," if any. Def. Mot. Ex. 1 at ECF p. 18. Defendants make no

4

showing that this broader set of personnel documents is relevant to the parties' claims and defenses in this action. Consequently, defendants must limit the requested release to plaintiff's application materials, *see Haygood v. Mastercard Int'l Inc.*, 2026 WL 962482, at *3 (S.D.N.Y. Apr. 9, 2026), and documents sufficient to show her compensation at CARES (including benefits). *See Broome v. Int'l Cruise & Excursions Gallery, Inc.*, 2019 WL 13144879, at *4 (E.D.N.Y. Nov. 21, 2019). As so limited, plaintiff must execute the release.

*Redactions*

In RFP 10, defendants ask plaintiff to produce documents "received . . . from any current or former employee of [HHC] or the City" concerning the allegations contained in the Complaint, *see* Def. Mot. Ex. 2, at 36-37, and in RFP 37, defendants request documents supporting her allegation that, "since at least May 2022, many of Carambot's former colleagues and current staff members at Rikers have written letters, some anonymously, complaining about [Virginia] Fineran's poor management." *Id*. at 52 (quoting Compl. ¶ 78). In response to RFP 10, plaintiff stated that she was "withhold[ing] identifying information of non-party witnesses where appropriate to prevent retaliation, subject to further court order." *Id*. at 37. Likewise, in response to RFP 37, plaintiff objected to "producing identifying information of anonymous authors." *Id*. at 52.

Defendants now seek all responsive documents withheld by plaintiff on this basis. Def. Mot. at 3-4. In her opposition letter, plaintiff explains that she "has not withheld documents," but concedes that she has redacted the "identifying information of certain non-party individuals," and argues that "such protections are appropriate." Pl. Opp. at 2 (citing *Walsh v. Top Notch Home Designs Corp.*, 2022 WL 3300190, at *5 (E.D.N.Y. Aug. 11, 2022)). In reply, defendants reiterate their demand for "copies of the anonymous letters" (which they apparently believe plaintiff has in fact withheld), and add a request for a "privilege log for any withheld or redacted documents." Def. Reply at 3.

5

Defendants are not entitled to a "privilege log," because plaintiff makes no claim of privilege. Instead, she claims that she should not be required to disclose "sensitive non-party identities without necessity." Pl. Opp. at 2. However, plaintiff provides no support for her suggestion that the non-party individuals in question would be subject to retaliation or other adverse consequences if their identities were disclosed. This case is thus unlike *Walsh*, which was brought by the Secretary of Labor to restrain defendant Top Notch and its owner "from obstructing the Secretary's investigation and retaliating against cooperating employees," including by threatening to "deport, harm, and, *inter alia*, kill employees who cooperated with the investigation." 2022 WL 3300190, at *1, 5. In *Walsh*, the court expressly found that "fear of employer retaliation is not merely speculative here," *id*. at *5, noting that "[t]he very basis of this action as originally commenced was to restrain Defendants from obstructing the Secretary's investigation by, *inter alia*, retaliating against employees that cooperated with the Department of Labor," and that the Secretary had already met the evidentiary burden required to obtain an injunction. *Id*.

Here, by contrast, the Court has only the vague statement by plaintiff's counsel that the redacted names are too "sensitive" to reveal. Moreover, as defendants point out, the Stipulation and Protective Order issued by this Court on January 13, 2026 (Dkt. 83) permits plaintiff to designate documents produced in discovery as "confidential," thus restricting their further use and dissemination.[2] Consequently, plaintiff must produce all documents responsive to RFPs 10 and 37, without withholding or redacting any otherwise-responsive documents to conceal the identities of relevant non-parties.

---

[2] The Stipulation and Protective Order does not expressly authorize a party to designate discovery documents "attorneys' eyes only" or the like. However, the record does not reflect that plaintiff ever requested such treatment for the documents containing the "sensitive non-party identities," much less offered to produce the relevant information subject to such a designation.

**Plaintiff's Motion**

The Court has carefully reviewed (i) plaintiff's April 21 letter-motion (Dkt. 95); (ii) defendants' April 23 opposition letter (Dkt. 97); (iii) plaintiff's April 24 reply letter (Dkt. 98); (iv) plaintiff's May 6 unauthorized supplemental reply letter (Dkt. 102); (v) defendants' May 8 unauthorized response to that supplemental reply letter (Dkt. 103); (vi) and plaintiff's May 11 unauthorized reply to defendants' response (Dkt. 104).

***The Court will not accept any further submissions in this motion sequence except as specifically directed below***.

The papers filed thus far reveal that, although counsel for the parties worked cooperatively during the month of March to schedule depositions and refine the search terms that defendants proposed for identifying relevant ESI, their cooperation broke down after defendants made a 295-page ESI production on April 16. Since then, plaintiff's counsel Samuel O. Maduegbuna has unilaterally postponed at least three previously-scheduled depositions on the ground that defendants' production was "incomplete." However, attorney Maduegbuna initially failed to explain what if anything was missing from that production. Instead, he demanded "a revised hit report reflecting the search terms and methodology that generated the documents produced," so that he could "assess completeness." Then, on April 22 – *after* the first deposition date came and went, and *after* plaintiff filed her motion to compel – he sent a deficiency letter identifying six emails or email chains that, in plaintiff's view, should have been included in defendants' April 16 production but were not. Maduegbuna then demanded that defendants respond to his April 22 letter, and make a supplemental production, in 24 hours.

Defendants' counsel, Elishiva L. Rosen, made matters worse by refusing to provide the requested hit report (which would have confirmed whether the search terms requested by plaintiff were used for defendants' April 16 production); refusing even to consider postponing the

7

depositions of any of defendants' witnesses, instead insisting that that if they did not go forward on the originally-scheduled dates, they would be waived; and repeatedly refusing to meet and confer with attorney Maduegbuna concerning these matters. Moreover, insofar as the record before this Court reflects, attorney Rosen has not yet responded substantively to plaintiff's April 22 deficiency letter, which she has now had for two and a half weeks.

Consequently, the Court will conduct a discovery conference, in accordance with Local Civil Rule 37.2, on **May 19, 2026**, at **11:00 a.m.**, in Courtroom 20A of the Daniel Patrick Moynihan United States Courthouse. Prior to the conference:

a. Defendants must serve upon plaintiff, and file with the Court, the requested hit report – or other written documentation – showing (i) the precise search terms and strings that were used to prepare the April 16 ESI production; and (ii) the custodians whose ESI was searched using those terms and strings.

b. The parties' lead counsel must then meet and confer, in real time, for at least 30 minutes, in a good faith effort to resolve any remaining questions regarding defendants' April 16 production.

At the April 19 conference, plaintiff's counsel should be prepared to explain the basis for his belief that a revised hit report, corresponding to the April 16 production, was required by prior order of this Court. Additionally, he should address why he insisted that the April 16 production was deficient, and moved for discovery relief, *before* disclosing the reason for his contention that the production was incomplete. Defendants' counsel should be prepared to explain why she so rigidly refused to provide the requested hit report, which – although not expressly required by any prior order of this Court – would have cost defendants almost nothing, confirmed the search terms used for the April 16 production, and allowed the parties to have an informed discussion as to whether it was in fact incomplete. She should also address her refusal to meet and confer with

opposing counsel on these issues. The Court reiterates that, except as directed herein, the Court does not require, and will not accept, any further briefing from the parties as to the issues discussed above. In the future, the Court expects the parties' counsel to strive for a higher level of professionalism in their dealings with one another.

## Conclusion

Defendants' motion to compel additional discovery (Dkt. 96) is GRANTED IN PART, as set forth above. Plaintiff must produce the documents and information required by this Order no later than **May 26, 2026**.

Dated: New York, New York       **SO ORDERED.**
        May 11, 2026

_____
**BARBARA MOSES**
**United States Magistrate Judge**

9